**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**PATTI DECOURCY,**

        **Plaintiff,**                    **CIVIL ACTION NO. 18-cv-10380**

        **v.**                                 **DISTRICT JUDGE DENISE PAGE HOOD**

**COMMISSIONER OF**                **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

        **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Patti Decourcy seeks judicial review of Defendant Commissioner of Social Security's determination that she is entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g) from September 30, 2008 through August 23, 2012, but not thereafter. (Docket no. 1.) Before the Court are Plaintiff's Motion and Brief for Remand Pursuant to Sentence Four (docket no. 12) and Defendant's Motion for Summary Judgment (docket no. 14). Plaintiff has also filed a Reply to Defendant's Motion for Summary Judgment. (Docket no. 15.) The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 3.) The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

**I.       RECOMMENDATION**

For the reasons that follow, it is recommended that Plaintiff's Motion for Remand Pursuant to Sentence Four (docket no. 12) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 14) be **GRANTED**.

**II.      PROCEDURAL HISTORY**

Plaintiff previously filed applications for a period of disability, disability insurance benefits, and supplemental security income on December 12, 2005. (TR 74.) Administrative Law Judge (ALJ) Patricia E. Hartman issued an unfavorable decision with regard to those applications on September 30, 2008, determining that Plaintiff had not been under a disability from November 14, 2005, through the date of the decision. (TR 74-82.) ALJ Hartman's decision became the final decision of the Commissioner on November 18, 2010, when the Appeals Council denied Plaintiff's request for review. (Docket no. 12 at 6; *see Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).)

Plaintiff protectively filed the instant applications for a period of disability, disability insurance benefits, and supplemental security income on December 23, 2010, alleging that she has been disabled since September 30, 2008, due to seizures, recurrent shoulder dislocation, depression, memory loss, anxiety, no concentration, and confusion. (TR 168-83, 197, 435.) The Social Security Administration denied Plaintiff's claims on March 23, 2011, and Plaintiff requested a *de novo* hearing before an ALJ. (TR 83-110, 123-25.) On October 31, 2011, Plaintiff appeared with a representative and testified at a hearing before ALJ Ronald Herman. (TR 36-70.) ALJ Herman subsequently issued an unfavorable decision on November 14, 2011, which the Appeals Council declined to review on April 15, 2013. (TR 1-7, 23-32.)

Plaintiff then commenced an action for judicial review on June 18, 2013, *Decourcy v. Comm'r of Soc. Sec.*, No. 13-cv-12683 (E.D. Mich. 2013). On January 9, 2014, the parties stipulated to remand the matter for further administrative action. (TR 637-38.) Upon the parties' stipulation, the court entered an order and judgment reversing ALJ Herman's decision, remanding the matter to the agency for further evaluation pursuant to sentence four of § 405(g), and instructing the Appeals Council to remand the case to an ALJ with instructions to update the record, reevaluate the evidence, further consider Plaintiff's residual functional capacity (RFC), and issue a new decision. (TR 636, 639.) The Appeals Council issued an order in furtherance of and in accordance with the court's order on May 22, 2014. (TR 640-44.)

On remand, Plaintiff appeared with a representative and testified at a hearing before ALJ Kendra S. Kleber, on September 3, 2014. (TR 499-57.) And on September 26, 2014, ALJ Kleber issued an unfavorable decision with regard to Plaintiff's claims. (TR 648-62.) Plaintiff filed written exceptions to ALJ Kleber's decision, and upon review thereof, the Appeals Council found that ALJ Kleber's RFC finding did not fully comply with the Appeals Council's May 22, 2014 Order and that ALJ Kleber did not adequately explain the application of Social Security Acquiescence Ruling (AR) 98-4(6) to the RFC finding. (TR 670-71.) The Appeals Council therefore remanded Plaintiff's case to an ALJ for resolution of those issues; specifically, with instructions to include decisional language explaining which findings from the September 30, 2008 decision remain binding in accordance with AR 98-4(6); further evaluate Plaintiff's mental impairment; give further consideration to Plaintiff's maximum RFC; further consider the non-treating source opinions in accordance with the Social Security Administration's regulations and rulings; and if warranted, obtain supplemental evidence from a vocational expert (VE) to clarify the effect of the assessed limitations on Plaintiff's occupational base. (TR 670, 672.)

3

On the second remand, Plaintiff appeared with a representative and testified at another hearing before ALJ Kleber on May 11, 2016. (TR 558-612.) In a June 29, 2016 decision, ALJ Kleber found that Plaintiff was disabled from September 30, 2008 through August 23, 2012, but her disability ended on August 24, 2012, because a medical improvement occurred that rendered her capable of performing a significant number of jobs in the national economy. (TR 435-53.) The Appeals Council declined to review the ALJ's decision (TR 424-30), and Plaintiff commenced this action for judicial review. The parties then filed cross dispositive motions, which are currently before the Court.

### III.   HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff cited excerpts of the May 11, 2016 hearing testimony in her brief. (Docket no. 12 at 12-15.) The ALJ provided a detailed, factual summary of Plaintiff's medical record and the hearing testimony throughout her decision. (TR 442-53.) Defendant incorporates the ALJ's summary of evidence into her brief. (Docket no. 14 at 5.)  Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies between Plaintiff and the ALJ's recitations of the record. Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also make references and citations to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

### IV.   ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since September 30, 2008. (TR 440-41.) Next, the ALJ found that Plaintiff was disabled from September 30, 2008 through August 23, 2012, because Plaintiff suffered from the severe impairments of seizure disorder, right shoulder dislocations, and depression, and the severity of

4

Plaintiff's seizure disorder was sufficient to meet the criteria of section 11.02A of 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 441-44.) The ALJ then determined that Plaintiff experienced a medical improvement related to the ability to work as of August 24, 2012. (TR 444-47.) The ALJ further determined that beginning August 24, 2012, Plaintiff had the RFC to perform a limited range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following specifications:

> [A]t her best, Ms. DeCourcy can lift or carry up to 20 pounds occasionally with the left upper extremity and 10 pounds with the right upper extremity. She can frequently, but not continuously, lift 10 pounds with the left upper extremity, using the right upper extremity as an assist. Ms. DeCourcy can stand or walk for up to six hours of an eight-hour workday for two hours at a time. Ms. DeCourcy can sit for up to six hours of an eight-hour work day for two hours at a time. Ms. DeCourcy can occasionally climb stairs or ramps, but cannot climb ladders or scaffolds. Ms. DeCourcy can occasionally balance on a moving platform, stoop, crouch, and kneel, but she cannot crawl. She is frequently, but not continuously, able to handle, finger or feel with the right upper extremity. She is occasionally able to reach forward with the right upper extremity, but not reach overhead with the right upper extremity. She is frequently, but not continuously, able to reach forward or overhead with the left upper extremity. The work Ms. DeCourcy can perform does not involve commercial driving, or exposure to hazards such as unprotected heights or uncovered industrial machinery. The work does not involve exposure to extreme cold or extreme heat. The work can involve occasional exposure to humidity, or to fumes, dust, smoke or environmental pollutants. The work can involve moderate noise, equivalent to an office environment. The work does not involve use of vibrating hand tools. Ms. DeCourcy can perform simple tasks, defined as those that can be learned after a short demonstration or within 30 days. Ms. DeCourcy is able to focus sufficiently to perform the tasks involved in assigned work for 90% of the day not counting regularly scheduled breaks. The work Ms. DeCourcy can perform is low stress, defined as work that requires no more than occasional changes in the work setting. The work does not involve an inflexible or fast pace including a speed-controlled assembly line. The work is routine and predictable, defined as performing the same tasks in the same place, each day.

(TR 447-51.) Subsequently, in reliance on the VE's testimony, the ALJ decided that Plaintiff was unable to perform past relevant work, but she was capable of performing a significant number of jobs in the national economy beginning August 24, 2012. (TR 451, 452-53.) The ALJ concluded

5

that Plaintiff was disabled under the Social Security Act from September 30, 2008 through August 23, 2012, and that her disability ended on August 24, 2012. (TR 437, 453.)

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the

decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

### B.  Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

7

**C.     Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and remanded under sentence four for an award of benefits or for further proceedings because: (1) "[t]he conclusion by the ALJ that Plaintiff had the residual functional capacity to perform a limited range of light work beginning August 24, 2012, is inconsistent with the hypotheticals posed to the VE and the testimony of the VE;" and (2) "[s]ubstantial evidence does not support the conclusion by the ALJ that Plaintiff was no longer disabled as of August 24, 2012." (Docket no. 12 at 2, 17-21.) Because the ALJ's determination that Plaintiff experienced a medical improvement proceeded her assessment of Plaintiff's RFC and her presentation of hypothetical questions to the VE, the undersigned will address Plaintiff's arguments in reverse order.

### 1. The ALJ's Determination that Plaintiff's Disability Ended on August 24, 2012

Plaintiff argues that the ALJ's determination that Plaintiff was no longer disabled as of August 24, 2012 is not supported by substantial evidence. (Docket no. 12 at 18-20; docket no. 15 at 3-6.) "In a 'closed period' case, the decision maker determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision." *Shepherd v. Apfel*, 184 F.3d 1196, 1199 n.2 (10th Cir. 1999) (citation omitted). "Typically, both the disability decision and the cessation decision [in a closed period case] are rendered in the same document." *Id.* The medical improvement standard applies to cases involving a closed period of disability. *Id.* at 1200*; Niemasz v. Barnhart*, 155 F. App'x 836, 839-40 (6th Cir. 2005). Once a claimant has been awarded disability benefits, an ALJ must find that there has been a medical improvement in the claimant's condition before terminating the claimant's benefits. Title 42 U.S.C. § 423(f) provides:

> A recipient of benefits under this subchapter . . . based on the disability of any individual may be determined not to be entitled to such benefits on the basis of a finding that the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling only if such finding is supported by –
>
> (1) substantial evidence which demonstrates that –
>
>   (A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and
>
>   (B) the individual is now able to engage in substantial gainful activity.

42 U.S.C. § 423(f)(1). Any decrease in severity of the claimant's impairment meets the statutory standard for medical improvement. *See* 42 U.S.C. § 423(f); 20 C.F.R. § 404.1594(c)(1). Medical improvement "is determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings

9

associated with that impairment(s)." 20 C.F.R. § 404.1594(c)(1). "If medical improvement has occurred and the severity of the prior impairment(s) no longer meets or equals the same listing section used to make [the] most recent favorable decision, [the ALJ] will find that the medical improvement was related to [the claimant's] ability to work." 20 C.F.R. § 404.1594(c)(3)(i).

The ALJ determined that Plaintiff's disability ended as of August 24, 2012, because Plaintiff experienced a medical improvement related to the ability to work. (TR 444-47.) Particularly, the ALJ determined that beginning on August 24, 2012, Plaintiff suffered from the severe impairments of seizure disorder, history of right shoulder dislocations, and depression, none of which met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 444-46.) In making this determination, the ALJ explained:

> Ms. DeCourcy's medical records show that since she began taking Keppra, she has had improved control of her seizures (C12F/3; C17F/1, 4). With a reduced number of seizures, Ms. DeCourcy also suffered less instances of right shoulder dislocations. In addition, beginning August 24, 2012, Ms. DeCourcy and her husband indicated her medications were helping with both her depression and her issues with sleeping (C12F/2-4; C13F/2).

(TR 446-47.) The ALJ further discussed Plaintiff's medical improvement as part of her discussion of the medical record and hearing testimony:

> At the hearing, Ms. DeCourcy testified that before her seizure medication was changed from Dilantin to Keppra, she experienced two to three seizures per month.
>
> . . . .
>
> In April 2011, Ms. DeCourcy presented for treatment after having two grand mal seizures (C7F/3). She was subsequently prescribed Keppra (C7F/4). Neurologist Mohammed Al-Qasmi M.D. indicated that he believed the recurrence of her seizures was due to Dilantin rather than her compliance with medication (C7F/5). I afford this statement great weight. The record evidence, as demonstrated below, shows increased control of her seizures once her medication was switched from Dilantin to Keppra (C12F/3; C17F/1, 4).
>
> . . . .

10

> In January 2012, Dr. Al-Qasmi described Ms. DeCourcy's seizure disorder as "intractable" (C9F/3). Ms. DeCourcy alleged that her medication made her drowsy, but that Keppra was controlling her seizures to the point she was functional (C10F/2). I afford this statement some weight to the extent it shows how the change in medications began to better control Ms. DeCourcy's seizures. However, it was not until August 2012 when both her seizures and depression began to come under better control. (exh. C12F, p. 2). . . .
>
> . . . .
>
> On August 23, 2012, Dr. Movva noted that Ms. DeCourcy was doing well with her depression (C12F/2). Moreover, her treatment notes show she had more energy, was sleeping better, and had not had any seizures since her last mental health therapy session. (exh. 12F, p. 2). I accept these findings and afford them great weight, as they demonstrate that Ms. DeCourcy's impairments showed medical improvement with treatment. . . .
>
> . . . .
>
> As for opinion evidence, I afford great weight to the 2012 statement from Dr. Al-Qasmi regarding the improved control of Ms. DeCourcy's seizures since beginning Keppra to the extent it shows Ms. DeCourcy's condition was improving. (exh. 10F, p. 2). As noted above, Ms. DeCourcy's depression was not yet controlled, which led me to conclude that Ms. DeCourcy did not show full medical improvement until August 24, 2012.
>
> . . . .
>
> . . . [S]ince she began Keppra she has only had two instances of seizures, showing a decrease in recurrence. Moreover, at the hearing, she testified that her seizures are well controlled, and the last time she dislocated her right shoulder was during her last seizure. Ms. DeCourcy's depression also improved with treatment, as she and her husband reported her medications were helping.

(TR 442-43, 448-50.)

Plaintiff argues that the date cited by the ALJ as the date of medical improvement, August 24, 2012, is "totally arbitrary." (Docket no. 12 at 18; docket no. 15 at 3.) Plaintiff concedes that her seizure disorder has come under better control, but she argues that there is no factual basis that this improvement occurred on August 24, 2012. (Docket no. 15 at 3-4.) Plaintiff argues in this regard that the psychiatric record relied upon by the ALJ to make her decision simply stated that

11

Plaintiff had not had a seizure since July 26, 2012, but Plaintiff continued to have seizures for two years, so the ALJ's conclusion is "a stretch." (Docket no. 12 at 19; docket no. 15 at 4.)

Plaintiff does not provide a citation for the record to which she refers in her argument; presumably, Plaintiff refers to the treatment record from the August 23, 2012 medication review conducted by her psychiatrist, Usha Movva, M.D. (TR 980.) This record indicates that Plaintiff was previously seen for a psychiatric evaluation on July 26, 2012, and that she had not had any seizures since her last appointment. The record also indicates that Plaintiff was feeling "very depressed" at her July 26, 2012 physical evaluation, but at the August 23, 2012 medication review, Plaintiff was less depressed, had more energy, and was sleeping much better. (TR 980.)

As Plaintiff indicates, the ALJ did indeed cite to this record as support for her determination that Plaintiff had experienced a medical improvement. (*See* TR 443, 447, 448 (citing TR 980 as Ex. C12F/2).) But it is not the only record on which the ALJ relied to support her determination that Plaintiff's seizure disorder had improved. The ALJ cited and assigned great weight to records reflecting that shortly after Plaintiff suffered from two grand mal seizures in April 2011, Dr. Al-Qasmi switched Plaintiff's seizure medication from Dilantin to Keppra on the belief that the Dilantin was the cause of her recurrent seizures. (TR 442, 449.) The ALJ also cited Plaintiff's hearing testimony that she experienced about two to three seizures per month while taking Dilantin, but after she switched to Keppra, she experienced much better results and hadn't had a seizure in a couple of years. (TR 442, 448.) The ALJ also cited numerous treatment notes from Dr. Al-Qasmi and Dr. Movva reflecting the same. In fact, as the ALJ pointed out, since Plaintiff began taking Keppra in April 2011, Plaintiff only had two instances of seizures through the date of the June 29, 2016 decision – one instance occurred when Plaintiff had three seizures in one day

12

in September 2013, which Dr. Al-Qasmi attributed to stress, and the last instance occurred in June 2014, after which Dr. Al-Qasmi increased Plaintiff's dose of Keppra. (TR 442, 448, 450.)

Contrary to Plaintiff's assertion, the ALJ did not explicitly designate August 24, 2012 as the exact date on which Plaintiff experienced a medical improvement in her seizure disorder; the ALJ designated August 24, 2012 as the date on which Plaintiff experienced a medical improvement in her *combination of impairments*, which was sufficient to end Plaintiff's disability. *See* 42 U.S.C. § 423(f)(1). Specifically, the ALJ noted that while Plaintiff reported to Dr. Al-Qasmi in January 2012 that her seizures were under control with Keppra, "it was not until August 2012 when both her seizures and depression began to come under better control." (TR 443.) Additionally, the ALJ explicitly concluded that Plaintiff did not show "full medical improvement" until her depression was controlled in August of 2012. (TR 449.)

It was to support this conclusion that the ALJ repeatedly cited Dr. Movva's August 23, 2012 treatment note reflecting not only that Plaintiff hadn't recently had a seizure, but also that Plaintiff's depression had improved with treatment and medication. The ALJ also cited subsequent treatment notes which show that Plaintiff's depression symptoms either remained stable or continued to improve. For example, the ALJ cited November 2012 and January 2013 treatment records in which Plaintiff reported that her depression medications were helping and that she hadn't noticed any increase in her depression symptoms. (TR 448 (citing TR 981-82).) The ALJ also pointed out that in July 2014, Plaintiff showed no signs of depression, anxiety, or agitation, and that her depression was described as mild. (TR 448 (citing TR 1021, 1023).) The ALJ further noted Plaintiff's testimony at the May 11, 2016 administrative hearing that she was no longer receiving mental health treatment. (TR 450 (citing 523-24).) The record evidence relied upon by the ALJ indicates that Plaintiff experienced medical improvement with regard to her seizure

13

disorder *and* her depression as of August 24, 2012. Thus, there is nothing arbitrary about this date, and the ALJ's determination that Plaintiff experienced medical improvement as of August 24, 2012 is supported by substantial evidence.

Plaintiff argues that while Dr. Movva's August 23, 2012 treatment note does state that Plaintiff was less depressed, her diagnosis remained "Major depression, recurrent," and Dr. Movva continued to prescribe Plaintiff medication. (Docket no. 12 at 19.) But "the mere diagnosis of [an impairment], of course, says nothing about the severity of the condition." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). And as discussed above, the record reflects that Plaintiff experienced improvement in the severity of her depression as of August 23, 2012, and that her depression remained relatively stable or continued to improve thereafter. Thus, the fact that Plaintiff still had a diagnosis of depression for which she took medication after August 24, 2012, does not detract from the evidence showing that her depression symptoms had improved with treatment as of that date. Moreover, the ALJ gave great weight to the opinion of the psychological consultative examiner, Mark Zaroff, Ph.D., that Plaintiff suffered from "moderate" major depressive disorder, and the ALJ incorporated the functional limitations assessed by Dr. Zaroff into Plaintiff's RFC. (TR 449, 450.) As the ALJ noted, no treating source suggested mental limitations resulting from Plaintiff's depression greater than those assessed in Plaintiff's RFC. Plaintiff's argument in this regard fails.

Plaintiff also argues that the ALJ's decision is factually inconsistent with respect to Plaintiff's seizure activity. (Docket no. 12 at 19-20; docket no. 15 at 4.) Plaintiff correctly points out that in analyzing Dr. Al-Qasmi's September 2014 opinion, the ALJ misstated that Plaintiff experienced only two seizure episodes between 2011 and 2014.[1] (*Id*.; TR 448.) As Plaintiff also

---

[1] Plaintiff does not specifically challenge the ALJ's assessment of Dr. Al-Qasmi's opinion, and any such argument is therefore waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (citation and internal quotation

14

points out, however, the ALJ's decision also refers to and discusses all four of Plaintiff's seizure episodes that occurred between 2011 and 2014 – in February 2011, April 2011, September 2013, and June 2014. (*Id*.; TR 442, 448.) The ALJ also properly noted that Plaintiff had experienced only two seizure episodes since she began taking Keppra in April 2011, which she appropriately characterized as a decrease in recurrence. (TR 450.) These instances in which the ALJ properly recited the frequency of Plaintiff's seizure activity show that the ALJ was aware of the actual frequency of Plaintiff's seizure activity in assessing Plaintiff's medical improvement and RFC. Thus, the undersigned does not find the ALJ's misstatement sufficient to warrant remand. *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires [a reviewing court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

Plaintiff further argues that her continuing disability was never based on her seizures but on her chronic pain and the side effects of her seizure medications. (Docket no. 12 at 19.) In her brief, Plaintiff identifies the side effects as fatigue, drowsiness, and difficulties in concentration. (*Id*. at 19, 20.) In her reply brief, Plaintiff identifies additional side effects of headaches and blurred vision. (Docket no. 15 at 5.) Plaintiff argues that the ALJ erred because she failed to address the impact of Plaintiff's pain and medication side effects on Plaintiff's RFC beyond the "totally arbitrary" finding that Plaintiff would be on-task 90% percent of the time. (Docket no. 12 at 19, 20; docket no. 15 at 4-5.)

"The Sixth Circuit has held that the ALJ must evaluate '[t]he type, dosage, effectiveness, and side effects of any medication' as part of the process of determining the extent to which side

---

marks omitted) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.")

effects impair a claimant's capacity to work." *Morin v. Comm'r of Soc. Sec.*, 259 F. Supp. 3d 678, 683 (E.D. Mich. 2017) (citing *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014) (quoting 20 C.F.R. § 416.929(c)(3)(i)-(vi))). "Further, hypothetical questions to vocational experts must account for medication side effects." *Id.* (citing *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789-90 (6th Cir. 2009)).

Here, the ALJ did explicitly consider Plaintiff's chronic pain and the side effects of Plaintiff's medications, and she incorporated the limitations from those side effects into Plaintiff's RFC. For example, the ALJ noted Plaintiff's testimony that she had pain in her right upper extremity, even when she was not using it; that she took Tylenol for her pain; and that she experienced medication side effects of headaches and fatigue. (TR 448.) The ALJ also noted Plaintiff's allegation that her medication made her drowsy. (TR 443.) Additionally, the ALJ acknowledged Dr. Zaroff's note that Plaintiff reported difficulty with attention and concentration secondary to her seizures, and the ALJ adopted the functional limitations assessed by Dr. Zaroff as a result of those difficulties. (TR 449, 450.) Specifically, the ALJ limited Plaintiff's RFC to simple, routine, predictable, and low-stress work that does not involve an inflexible or fast pace, but she found that Plaintiff would be still able to focus sufficiently to perform the tasks involved in assigned work for 90% of the workday. (TR 447.) The ALJ also accounted for the pain in Plaintiff's right upper extremity by limiting her to occasional lifting of ten pounds; frequent handling, fingering, or feeling; occasional forward reaching; and no overhead reaching. (TR 447.) And the ALJ explicitly accounted for Plaintiff's side effects by stating that "[h]er seizure disorder and medication side effects preclude her from all commercial driving and exposure to hazards such as unprotected heights or uncovered industrial machinery." (TR 447, 451.)

Plaintiff argues that the ALJ's finding that Plaintiff would be able to focus on-task for 90% of the workday is "totally arbitrary." But Plaintiff does not indicate what limitation, if any, the ALJ should have assessed in its place. Nor does Plaintiff indicate what additional limitations the ALJ should have assessed to accommodate for her chronic pain or medication side effects. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (noting that the plaintiff bears the burden of proving the existence and severity of limitations caused by his impairments through step four of the sequential evaluation process); *see also, Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). Plaintiff has not met her burden in this regard. As discussed, the ALJ incorporated the side effects of Plaintiff's medications and Plaintiff's chronic pain into Plaintiff's RFC and presented those limitations to the VE in her hypothetical questions, as she was required to do. The ALJ's determination that Plaintiff experienced a medical improvement as of August 24, 2012, after which she was able to perform substantial gainful activity is supported by substantial evidence. Plaintiff's Motion should be denied with respect to this issue.

> 2. *The Consistency of the ALJ's RFC Assessment, the Hypothetical Questions Presented to the VE, and the VE's Testimony*

At the May 11, 2016 hearing, the ALJ asked the VE if there were any jobs available for a hypothetical individual with the same age, education, and past relevant work experience as Plaintiff, who also had all of the enumerated limitations in Plaintiff's RFC that the ALJ had assessed as a limited range of light work. (TR 596-99.) The VE testified that there were no jobs available at the light level, but there were two jobs at the sedentary level that fit within all the parameters of the ALJ's hypothetical question: a surveillance systems monitor, with approximately 5,000 jobs available in the United States, and a callout operator, with approximately 13,000 jobs available in the United States. (TR 599-602.)

Plaintiff argues that the ALJ's decision is erroneous and not supported by substantial evidence because the ALJ's determination that Plaintiff had the RFC for a limited range of light work was inconsistent and at odds with the VE's testimony that the only jobs available were at the sedentary level. (Docket no. 12 at 17.) "Simply put," Plaintiff argues, "there is no testimony in the record supporting the proposition that the Plaintiff could perform a limited range of light work." (Docket no. 15 at 2.) While not explicitly stated, Plaintiff seemingly argues that the validity of the ALJ's RFC assessment is dependent on the VE's testimony.

The Sixth Circuit has previously addressed and rejected this concept in a similar case, stating:

> That is not how the system operates. The RFC is based on the claimant's particular disabilities, an inquiry wholly independent from what jobs are available in the regional and national economy. *See* 20 C.F.R. § 404.1545(a) (listing factors that determine an RFC). The VE does not testify as to what the claimant is physically capable of doing, but rather as to what jobs are available, given the claimant's physical capabilities. Thus, in a step-five analysis, the VE's testimony depends upon the RFC and not the other way around.

*Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 36 (6th Cir. 2010) (citation omitted). *See also Panecki v. Comm'r of Soc. Sec.*, No. 15-13005, 2016 WL 3524328, at *7 (E.D. Mich. June 8, 2016), *report and recommendation adopted*, No. 15-13005, 2016 WL 3476703 (E.D. Mich. June 27, 2016) ("Courts within this circuit have consistently found that the VE's findings regarding the availability of jobs does not alter the ALJ's RFC finding.") (citing cases); *Cotton v. Comm'r of Soc. Sec.*, No. 1:14-cv-900, 2016 WL 80667, at *4 (W.D. Mich. Jan. 7, 2016) ("The VE's testimony that plaintiff could perform sedentary jobs has no bearing on the ALJ's decision at step four that plaintiff had the RFC to perform light work.") Thus, "[e]ven if the only jobs actually available in the economy for a claimant with a light RFC happen to be sedentary, it does not change the fact the claimant is still capable of performing light work." *Salas v. Comm'r of Soc. Sec.,* No.

1:11 CV 1511, 2012 WL 3283415, at *7 (N.D. Ohio July 26, 2012) (Knepp, M.J.), *report and recommendation adopted*, No. 1:11-CV-1511, 2012 WL 3278913 (N.D. Ohio Aug. 10, 2012). Plaintiff's argument therefore fails.

The ALJ properly relied on the VE's testimony to determine that Plaintiff is not disabled because there are significant numbers of jobs available that Plaintiff can perform. The ALJ's determination in this regard is based on substantial evidence, and it should not be disturbed.

## VI. CONCLUSION

For the reasons stated herein, the court should **DENY** Plaintiff's Motion for Remand Pursuant to Sentence Four (docket no. 12) and **GRANT** Defendant's Motion for Summary Judgment (docket no. 14).

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: January 8, 2019         s/ Mona K. Majzoub
                               MONA K. MAJZOUB
                               UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: January 8, 2019         s/ Leanne Hosking
                               Case Manager